# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

BRANDI JO CANNON,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civil Action 2:14-cv-2397
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff, Brandi Jo Cannon ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. This matter is before the United States Magistrate Judge for disposition based on the parties' full consent (ECF No. 22) and for consideration of Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 21), and the administrative record (ECF No. 11). For the reasons that follow, the Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

Plaintiff protectively filed her application for supplemental security income on August 25, 2011, alleging that she had been disabled since June 2, 2009, due to a number of conditions. On February 6, 2013, following initial administrative denials of Plaintiff's application, a hearing was held before Administrative Law Judge Joseph R. Doyle (the "ALJ").

Plaintiff, represented by counsel, appeared and testified at the hearing. Plaintiff testified

that she had not worked in fifteen years.  (*Id.* at PAGEID ##110-111.)  Plaintiff also testified about various allegedly disabling conditions, including necrotizing fasciitis and its lingering effects (PAGEID ##114-119), back and neck pain (PAGEID #119), fibromyalgia (PAGEID ##119-120), numbness in her hand (PAGEID ##121-122), and panic attacks and depression (PAGEID ##124-126).  Plaintiff testified that she is left-handed (PAGEID #121), that "a lot of the reason why" she did not work was that she was caring for her son (PAGEID #124), that she had never driven (PAGEID #125), and that she had never worked (PAGEID #128).  Plaintiff conceded in response to questioning by the ALJ that she had not participated in physical therapy despite numerous recommendations by health care providers that she do so (PAGEID #132) and that she is right-handed (PAGEID #134).  Evidence in the record also suggested that Plaintiff had worked at various times and that she had a driver's license.  (*Id.* at PAGEID ##83, 85.)

Vocational Expert Mary Harris (the "VE") also testified at the administrative hearing.  The ALJ first observed that Plaintiff had no past work.  (*Id.* at PAGEID# 136.)  The ALJ asked the VE to consider a hypothetical individual with Plaintiff's vocational profile and the residual functional capacity ("RFC")[1] the ALJ ultimately assessed.  (*Id.* at  PAGEID ##136-39.)  The VE testified that such an individual could perform thousands of  jobs in the regional economy.  Representative jobs included packager, light cleaner, and office helper.  (*Id.* at PAGEID ##136-37.)

On March 8, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within  the meaning of the Social Security Act.  (*Id.* at PAGEID# 60-69.)  At step one of the

---

[1]A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her application date of August 25, 2011. (*Id.* at PAGEID #78.) At step two, the ALJ found that, through the application date, Plaintiff had the severe impairments of degenerative disk disorder with radiculopathy, fibromyalgia with headaches, residual symptoms secondary to recurrent necrotizing infections in lower extremities, asthma, major depressive disorder, anxiety disorder, posttraumatic stress disorder, panic disorder, insomnia, and history of polysubstance abuse including cocaine and heroin. (*Id.* at PAGEID #79.) The ALJ noted that Plaintiff had also been diagnosed with obesity, hepatitis, and gastroesophageal reflux disease ("GERD"), but the ALJ considered those to be non-severe impairments because they were minimally symptomatic and the record lacked evidence showing that these impairments more than minimally interfered with her ability to work. (*Id.*)

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
> 2. Does the claimant suffer from one or more severe impairments?
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments as described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #80.)

The ALJ then set out his finding with respect to Plaintiff's RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except [she] can never climb ladders, ropes or scaffolds; can occasionally climb stairs and ramps; can occasionally stoop, kneel, crouch, crawl and engage in activities requiring balance; must avoid concentrated exposure to extreme cold; must avoid concentrated exposure to humidity; and must avoid all exposure to operational controls of moving machinery and unprotected heights; limited to simple, routine and repetitive tasks; limited to work in a low stress environment defined as requiring only occasional decision-making and only occasional changes in work setting; and limited to only occasional, brief and superficial interaction with the public and co-workers.

(*Id.* at PAGEID #82.)

In arriving at that RFC, the ALJ considered all symptoms expressed by Plaintiff in light of the objective medical evidence and other evidence in the record, including opinion evidence. He first observed that Plaintiff had suffered from necrotizing fasciitis and that the disease was not active at the time of the hearing. (*Id.* at PAGEID #83.) With respect to Plaintiff's disk disorder and fibromyalgia, the ALJ noted that Plaintiff had declined to participate in recommended physical therapy and that her reported activities over a long period of time were inconsistent with disabling pain. (*Id.* at PAGEID ##90-94.) With respect to Plaintiff's mental impairments, the ALJ concluded that the relevant evidence supported a finding that Plaintiff had severe symptoms but also that "the evidence failed to corroborate the claimant's allegations regarding frequency and severity." (*Id.* at PAGEID #90.)

In the assessment of Plaintiff's physical symptoms, the ALJ assigned some weight to the opinion of Teresita Cruz, M.D., even though Dr. Cruz rendered that opinion in September 2010. Dr. Cruz opined that Plaintiff retained the ability to perform routine physical activities in spite of her complaints of disabling pain. (*See id.* at PAGEID #152.) The ALJ noted that

4

Dr. Cruz's opinion predated Plaintiff's necrotizing fasciitis, and he explicitly discounted it accordingly. (*Id.*) The ALJ gave significant weight to the opinion of Paul Morton, M.D., who opined in December 2011 that Plaintiff retained "the physical ability to perform some work-related activities." (*See id.* at PAGEID #166.) The ALJ concluded, explicitly, that Dr. Morton's opinion was "consistent with the record as a whole." (*Id.* at PAGEID #95.)

With regard to Plaintiff's mental symptoms, the ALJ assigned the greatest weight to the opinion of state agency reviewing psychologist Cindy Matyi, Ph.D., who opined that Plaintiff was not as disabled by her stress as she alleged. Dr. Matyi opined that Plaintiff was only moderately limited by stress in light of her ability to conduct the activities of daily living in spite of her anxiety. (*See id.* at PAGEID #161.) The ALJ assigned little weight to the opinion of one-time examining source, Dr. T. Rodney Swearingen, Ph.D., that Plaintiff was markedly impaired by stress. (*Id.* at PAGEID #96.) The ALJ noted that Dr. Swearingen's opinion was based on Plaintiff's statements and not on objective findings. He further observed that Plaintiff's statements to Dr. Swearingen were not consistent with the activities of daily living that she reported when she saw Dr. Swearingen. (*Id.*) The ALJ also gave little weight to one-time examining source Kent Rowland, Ph.D., for the same reasons. (*Id.*) Dr. Rowland evaluated Plaintiff in November 2011 and opined that Plaintiff's anxiety "undoubtedly would lead to inappropriate responses . . . ." (*Id.* at PAGEID #515.) The ALJ observed, however, that Dr. Rowland's opinion was based on Plaintiff's own statements about her condition and that Plaintiff had been demonstrably dishonest with Dr. Rowland. (*Id.* at PAGEID #97.) Having assigned little weight to the opinions of Drs. Swearingen and Rowland, the ALJ found no basis for greater stress-related limitations than those included in the RFC.

Relying on the VE's testimony, the ALJ concluded that Plaintiff was capable of

performing work that existed in significant numbers in the national economy. (*Id.* at PAGEID #98.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*) The ALJ declined to conduct a supplemental hearing because he found no "good reason" for doing so. (*Id.* at PAGEID #76-77.)

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial

6

evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. ANALYSIS

In her Statement of Errors, Plaintiff asserts five errors. First, she contends that the ALJ erred by failing to conclude that Plaintiff's obesity and hepatitis are severe impairments. Second, she contends that the ALJ erred by giving greater weight to the opinions of non-examining sources than to the opinions of two examining sources who had each seen Plaintiff once. Third, Plaintiff contends that the ALJ erred by failing to hold a supplemental hearing. Fourth, she contends that the ALJ erred by finding Plaintiff's subjective complaints to be largely incredible. Fifth, Plaintiff contends that the ALJ erred in his formulation of the hypothetical question that corresponded to the eventual RFC and that the VE's response is, therefore, unreliable. The undersigned considers these contentions of error in turn.

**A.     The Exclusion of Obesity, Hepatitis, and GERD as Severe Limitations**

The ALJ found that Plaintiff suffered from numerous impairments. Plaintiff contends, nevertheless, that the ALJ erred by failing to find that her obesity, hepatitis, and GERD constituted additional severe impairments.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis*

7

hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and include (1) physical functions; (2) the capacity to see, hear and speak; (3) "[u]nderstanding, carrying out, and remembering simple instructions"; (4) "[u]se of judgment"; (5) "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and (6) "[d]ealing with change in a routine work setting." 20 C.F.R. § 404.1521(a)–(b).

Where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

In Plaintiff's case, the ALJ found multiple severe impairments. Accordingly, his conclusion that Plaintiff's obesity, hepatitis, and GERD did not represent additional severe impairments is of little consequence. The sole issue is whether Plaintiff is able to demonstrate that the ALJ erred by excluded limiting effects of her obesity and hepatitis from the RFC. In her argument with respect to this assignment of error, Plaintiff has not identified any limitations caused by her obesity, hepatitis, or GERD that are not encompassed in the RFC as determined by the ALJ. She argues only that the ALJ should have concluded that these conditions constitute severe impairments. The undersigned concludes that Plaintiff cannot establish reversible error on the basis of the ALJ's failure to find additional severe impairments, independent of any failure to include limiting effects in the RFC. Accordingly, Plaintiff's first assignment of error has no merit.

**B.     The Weight Assigned to Examining Source Opinions**

According to Plaintiff, the ALJ erred by assigning little weight to the opinions of two consulting psychologists, each of whom had examined Plaintiff on one occasion. Dr. T. Rodney Swearingen examined Plaintiff in October 2010. The aspect of Dr. Swearingen's opinion to which Plaintiff directs the Court's attention is the finding that Plaintiff was markedly impaired in her ability to withstand stress. (ECF No. 11 at PAGEID #372.) Plaintiff further contends that Dr. Kent Rowland's opinion bolsters Dr. Swearingen's marked-impairment opinion. Plaintiff contends that the ALJ should have afforded greater weight to those opinions and that, had he done so, Plaintiff would have been deemed disabled. This argument is not persuasive.

An ALJ must consider all medical opinions provided in the record, and the opinions of examining medical sources like Drs. Swearingen and Rowland are generally given greater weight than the opinion of a non-examining source. 20 C.F.R. § 404.1527(c). Of course, an ALJ

may depart from that general rule in light of his application of the factors set out in § 404.1527(c). Those factors include the examining relationship, the treatment relationship, the length of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the medical source, and other relevant factors.

In Plaintiff's case, the ALJ explicitly identified the unsupportability of Dr. Swearingen's opinion and its inconsistency with the record as a whole as bases for assigning little weight to Dr. Swearingen's opinion that Plaintiff was markedly impaired by stress. (ECF No. 11 at PAGEID #96.) The ALJ explained, in great detail, his reasons for concluding that Dr. Swearingen's marked-impairment conclusion was not supported by the evidence of record. He focused primarily on Plaintiff's activities of daily living and the fact that Dr. Swearingen's opinion was based on Plaintiff's statements and not on observations or objective evidence. (*Id.*) The ALJ did not fail to apply the § 1527(c) factors to Dr. Swearingen's opinion, and his conclusions find substantial support in the record.

To some extent, the ALJ identified the same bases for assigning little weight to Dr. Rowland's testimony, and his conclusions in that regard are equally well-supported. (*Id.* at PAGEID ##88-90.) Of equal concern to the ALJ, as regards Dr. Rowland's opinion, was the fact that Plaintiff had misrepresented her substance abuse to Dr. Rowland, undermining the credibility of other statements that may have formed the basis for Dr. Rowland's opinion, casting suspicion on her statements to Dr. Rowland. (*Id.* at PAGEID ##89-90.) Finally, the ALJ also noted that Dr. Rowland had not stated a conclusion as to Plaintiff's level of functioning so that the ALJ had nothing to which to attach weight. (*Id.* at PAGEID #97.) The Court is not persuaded that the ALJ erred by giving reduced weight to Dr. Rowland's opinion for those

10

reasons. Plaintiff's second assignment of error has no merit.

C.  **The Failure to Hold a Supplemental Hearing & Consideration of the Opinions of Drs. Semmelman and Matyi**

Plaintiff contends that the ALJ erred by failing to hold a supplemental hearing upon Plaintiff's request. The entirety of Plaintiff's argument within this contention of error provides as follows:

> Plaintiff specifically requested that a supplemental hearing be held. The ALJ declined to hold a supplemental hearing[.] A supplemental hearing with expert psychological testimony is required[.]

(Pl.'s Statement of Errors, ECF No. 14 at PAGEID #642 (internal citation to the record omitted).) It appears, however, that Plaintiff meant to combine this argument with an earlier contention of error in which she challenges the ALJ's reliance on the opinions of state agency reviewing psychologists Drs. Semmelman and Matyi, who rendered their opinions in November 2010 and December 2011, respectively. Plaintiff appears to argue that the ALJ erred in relying on the opinions of Drs. Semmelman and Matyi because the record contains evidence generated after they rendered their opinions. Plaintiff maintains that the ALJ was instead required to hold a supplemental hearing and solicit testimony from a psychologist at that hearing.

Plaintiff's assertions lack merit. As a preliminary matter, the ALJ assigned Dr. Semmelman's November 2010 opinion "little weight," reasoning that Dr. Semmelman "failed to fully appreciate [Plaintiff's] social limitations. (ECF No. 11 at PAGEID #96.) The ALJ discussed at length the record evidence and concluded that Plaintiff was *more* limited than Dr. Semmelman opined. In contrast, the ALJ assigned Dr. Matyi's December 2011 opinion "significant weight," reasoning that the "opinion was well-supported by the evidence." (*Id*. at PAGEID #94.) The ALJ proceeded to discuss the record evidence that he found supported Dr.

11

Matyi's opinion. The undersigned finds that the ALJ offered good reasons supported by substantial evidence in support of the weight he assigned Dr. Matyi's opinion.

Plaintiff fails to identify any record evidence that either Dr. Matyi or the ALJ failed to consider that shows that her condition worsened or that otherwise undermines the ALJ's reliance on the Dr. Matyi's opinion. To the contrary, the ALJ's decision makes clear that he independently considered the medical record in formulating Plaintiff's mental RFC, including evidence generated after the state agency reviewing psychologists rendered their opinions. The undersigned therefore finds that the ALJ did not err in relying upon the December 2011 opinion of Dr. Matyi. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (ALJ did not improperly rely upon state agency physicians' stale opinions where it was clear the ALJ considered the medical examinations that occurred after the opinions were rendered and takes into account any changes); *Ruby v. Colvin*, No. 2:13–CV–01254, 2015 WL 1000672, at *4 (S.D. Ohio Mar. 5, 2015) ("[S]o long as an ALJ considers additional evidence occurring after a state agency physician's opinion, he has not abused his discretion.").

Because Plaintiff has not identified any other basis in support of his contention that the ALJ should have held a supplemental hearing, her third assignment of error has no merit.

**D. The Assessment of Plaintiff's Credibility**

A significant portion of the ALJ's decision is allotted to a discussion of the evidence supporting his conclusion that Plaintiff's subjective complaints lacked credibility. The ALJ cited and discussed specific evidence and recounted instances in which Plaintiff had testified falsely or had failed to supply accurate information to medical providers. He also identified instances in which Plaintiff had declined to follow recommended courses of treatment. Nevertheless, Plaintiff contends that the ALJ erred in his assessment of her subjective complaints and

credibility.

The Sixth Circuit has provided the following guidance with respect to a district court's review of an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247. "The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters*, 127 F.3d at 531); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility"). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)).

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248;

13

*see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996)[4]; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

In this case, the ALJ explained in great detail the bases for his credibility assessment and his conclusion that Plaintiff's subjective complaints were inconsistent with her activities of daily living and other evidence in the record. His findings in that regard are specific and are supported by substantial evidence. Plaintiff has not identified a specific deficiency in the ALJ's

---

[4]SSR 16-3p, which became effective March 28, 2016, superseded and rescinded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029, at *1. Because SSR 16-3p does not include explicit language to the contrary, it is not to be applied retroactively. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec*., 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."); *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541–42 (6th Cir. 2007) (declining to retroactively apply a newly effective Social Security Ruling in the absence of language reflecting the Administration's intent to apply it retroactively).

assessment. Rather, she cites authority for the proposition that an ALJ should not overstate the degree to which a claimant's activities of daily living contradict subjective complaints and then argues that the record does not support a finding of "symptom exaggeration or malingering." (ECF No. 14 at PAGEID #644.) The argument is not persuasive against the carefully explained bases for the ALJ's conclusion.

### E. An Error in a Hypothetical Question

In posing the hypothetical question that corresponded to the eventual RFC to the VE, the ALJ may have inserted the words "to find his abnormally" in a sentence otherwise devoted to stress. The sentence, as transcribed, is as follows: "They should work in a low stress job to find his abnormally, occasional decision making, and only occasional changes in the work setting." (ECF No. 11 at PAGEID #136.) Plaintiff contends that the VE's response to the hypothetical question was unreliable because of the stray words.

Plaintiff has not explained how the stray phrase could have affected the VE's response. The words do not constitute an additional limitation, so they could not have affected the VE's understanding of the hypothetical's limitations. Indeed, the placement of the words, if they were spoken, could only be interpreted to further limit plaintiff to an abnormally low stress job. The undersigned can conceive of no interpretation of the words that would have yielded a response that was *less* favorable to the Plaintiff. In short, Plaintiff's argument is not persuasive.

### IV. DISPOSITION

From a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner of Social Security's decision is **AFFIRMED.**

**IT IS SO ORDERED**.

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE